UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ESTEBAN GUERRA,

       Plaintiff,                         CASE NO.: 1:21-CV-24068

vs.

PIKE ELECTRIC, LLC,

       Defendant.

_____/

## **COMPLAINT**

Plaintiffs, Esteban Guerra, through his undersigned counsel and sues Defendant, Pike Electric, LLC, as follows:

### *Introduction*

1.     Plaintiff, Esteban Guerra, worked as an electrician for Defendant, Pike Electric, LLC, and filed this lawsuit to obtain recourse for the ways in which it treated him differently and ultimately fired him because he is Hispanic.

### *Parties, Jurisdiction, and Venue*

2.     **Plaintiff, Esteban Guerra**, was and is a resident of Miami-Dade County, Florida, at all times material, over 18 years old, and he is *sui juris*.

3.     Plaintiff Guerra was at all times material a Hispanic man and a member of a class of persons protected from discrimination in employment pursuant to the Florida Civil Rights Act of 1992 ("FCRA").

4.     Mr. Guerra worked as a cable splicer for Defendant.

5.     The EEOC issued a Notice of Right to Sue to Mr. Guerra on September 15, 2021.

1

6.     **Defendant, Pike Electric, LLC,** is *sui juris* Florida limited liability corporation that conducts business in Miami-Dade County, Florida.

7.     Defendant was and is responsible for the conduct, acts, and omissions of its officers, managers, supervisors, and employees at all times material to this action.

8.     This is an action for damages greater than $100,000, and this Court has jurisdiction over this matter.

9.     This Court has original jurisdiction over Plaintiff's claim that arise under federal law pursuant to 28 U.S.C. §1331 and supplemental/pendent jurisdiction over Plaintiff's related state law claim pursuant to 28 U.S.C. §1367.

10.    Venue is proper pursuant to 28 U.S.C. §1391(b)(ii) because Defendant is a foreign corporation that maintains multiple offices within this District and because most of the actions complained of occurred within this District.

### Factual Background

1.     Defendant describes itself on its website, www.pike.com, as "an Energy Solutions Company with turnkey services including engineering, design, construction and maintenance of transmission, distribution and substations up to 500 kV."

2.     Defendant employed more than 50 people in Miami-Dade and Broward Counties at all times relevant to this action.

3.     Defendant worked with Florida Power & Light in the construction, maintenance, and repair of underground electrical distribution systems during the time period relevant to this action.

4.     FPL contracted with Defendant to construct / reconstruct underground cabling at

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

various locations throughout Miami-Dade and Broward Counties.

5.      Defendant's course and practice was and remains to provide preferential treatment to its non-Hispanic employees to the detriment of its Hispanic employees.

6.      Defendant engaged in a pattern of discriminatory actions through its systemic differential treatment of Hispanic employees.

7.      Plaintiff was all last "based" out of Defendant's office in Pembroke Pines, Florida, where Defendant maintained an office, while Plaintiff performed his job in Miami-Dade and Broward Counties.

8.      During his work at the jobsites designated by Defendant, Defendant treated Plaintiff and its other Hispanic employees (and now former employees) less favorably than its non-Hispanic employees in several material ways.

9.      Defendant ultimately terminated the employment of Plaintiff and other Hispanic employees because they are Hispanic, while retaining employees similarly situated to Plaintiff in all material respects, who were not Hispanic, who either live and/or were "based" out of Defendant's West Palm Beach office, and who had less seniority than Plaintiff.

10.     Plaintiff was treated differently, discriminated against, subjected to negative treatment, and had his employment terminated because he are Hispanic.

11.     Put another way, the fact that Plaintiff is Hispanic was a motivating factor in the differential treatment they received and the adverse employment actions that Defendant took against him.

12.     In subjecting Plaintiff to this differential treatment and to these adverse employment actions based on his being Hispanic, Defendant intentionally discriminated against Plaintiff with

3

respect to the terms, conditions, and privileges of employment, as well as the decision to terminate his employment.

13.     All conditions precedent were performed by Plaintiff, occurred, or were waived by the Defendant, including through Plaintiff dual-filing his Charge(s) of Discrimination with the EEOC and the FCHR. More than 180 days have elapsed since the filing of Plaintiff Charges of Discrimination, and he filed this Complaint within 90 days of the EEOC's issuance of the Notice of Right to Sue to Plaintiff. (Exhibit "A".)

14.     Plaintiff agreed to pay his counsel a reasonable attorneys' fee for all services rendered.

### COUNT I – VIOLATION OF 42 U.S.C. §1981
### (RACE DISCRIMINATION)

Plaintiff, Esteban Guerra, reincorporates and re-alleges all preceding paragraphs as though set forth fully herein and further allege as follows:

15.     The Reconstruction Era Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") makes it unlawful to discriminate against an employee because of race:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. §1981.

16.     Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of his position.

17.     Plaintiff performed his work for Defendant satisfactorily, and he was in all respects a good employee of Defendant.

4

18.     Defendant discriminated against Plaintiff by failing to treat him the same or similar to its non-Hispanic employees as a result of his race.

19.     One of the ways that Defendant treated Plaintiff (and its current/former Hispanic employees) differently is by providing hand tools to its non-Hispanic employees, but requiring that Plaintiff and the other Hispanic employees purchase their own hand tools because of his race.

20.     Another way that Defendant treated Plaintiff (and its current/former Hispanic employees) differently is by providing equipment to facilitate the work (in order to minimize the manual labor involved) to its non-Hispanic employees, but not providing the equipment that would facilitate the work to Plaintiff, Esteban Guerra, or its current/former Hispanic employees.

21.     Defendant also assigned the work so that Plaintiff and its other Hispanic employees were required to perform the more difficult, technical, and/or laborious tasks, while allowing its non-Hispanic employees to perform the easier tasks, at a slower pace, and with more assistance from co-workers.

22.     Defendant paid its similarly situated non-Hispanic employees with similar tenure and experience more than the hourly rates paid to Plaintiff and its current/former Hispanic employees, even though the non-Hispanic employees possessed the same or inferior qualifications.

23.     Defendant allowed its non-Hispanic employees to work during inclement weather such as rain, so as to allow them to continue to receive their hourly pay, but required Plaintiff, Esteban Guerra, and its current/former Hispanic employees to go home, such that he was not paid on those inclement days due to his race.

24.     Ultimately, Defendant was faced with the decision about whether to terminate employees, and if so, which ones.

5

25.     Defendant terminated Plaintiff's employment on February 13, 2020.

26.     Defendant then proceeded to eliminate its employees based on whether they were Hispanic or not – when it terminated another 23 Hispanic employees on June 16/17, 2020.

27.     All of the persons fired by Defendant are/were Hispanic.

28.     Defendant filled the position held by Plaintiff and its other Hispanic employees by having its non-Hispanic employees who had less seniority and who were based out Defendant's West Palm Beach office take over for the work of the Hispanic employees who were performing the work, who had more seniority, who worked out of an office and who lived in areas closer to the jobsites designated by Defendant.

29.     More specifically, Defendant fired Plaintiff and its Hispanic employees who worked out of its Pembroke Pines office and lived in Miami-Dade and Broward Counties and utilized its non-Hispanic employees who had less seniority and who worked out of its West Palm Beach and lived outside of Miami-Dade and/or Broward Counties and who had less seniority than Plaintiff in order to continue the performance of the work at the jobsite located in Miami-Dade and Broward Counties.

30.     The discriminatory actions of Defendant against Plaintiff when considered individually or collectively, constitutes an adverse employment action because of their race for purposes of Section 1981.

31.     These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Plaintiff, Esteban Guerra, employment, and/or adversely affected his status as employee.

32.     As such, the disparate treatment Plaintiff, Esteban Guerra, suffered constitutes an

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

adverse employment action for which Section 1981 provides legal recourse.

33.     Defendant's actions were malicious and demonstrated a reckless indifference to the rights of Plaintiff.

34.     The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

35.     Plaintiff suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

36.     Pursuant to Section 1981, Plaintiff is entitled to recover his attorneys' fees and costs from Defendant, in addition to damages and punitive damages.

WHEREFORE Plaintiff, Esteban Guerra, demand the entry of a judgment in his favor and against Defendant, Pike Electric, LLC, after a trial by jury, declaring that the Defendant violated 42 U.S.C. §1981, awarding them compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting him a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of race, promoting Plaintiff to the position to which he should be holding, and awarding him his taxable costs and attorneys' fees.

## COUNT II – VIOLATION(S) OF TITLE VII
### (DISPARATE TREATMENT – RACE)

Plaintiff, Esteban Guerra, reincorporate and re-allege paragraphs 1 through 14 as though set forth fully herein and further alleges as follows:

23.     Defendant was at all times material the "employer" of Plaintiff as the term is defined by the Civil Rights Act, 42 U.S.C. § 2000e(1).

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

24. Plaintiff was at all times material an "employee" of Defendant, as the term is defined by the Civil Rights Act, 42 U.S.C. § 2000e(f).

25. Title VII of the Civil Rights Act provides as follows:

**((a)Employer practices**

It shall be an unlawful employment practice for an employer—

> **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> **(2)** to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S. Code § 2000e–2.

26. Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of his position.

27. Plaintiff performed his work for Defendant satisfactorily, and his was in all respects a good employee of Defendant.

28. Defendant discriminated against Plaintiff by failing to treat him the same or similar to its non-Hispanic employees as a result of his national origin.

29. One of the ways that Defendant treated Plaintiff (and its current/former Hispanic employees) differently is by providing hand tools to its non-Hispanic employees, but requiring that Plaintiff and the other Hispanic employees purchase their own hand tools because of their race.

30. Another way that Defendant treated Plaintiff (and its current/former Hispanic

8

employees) differently is by providing equipment to facilitate the work (in order to minimize the manual labor involved) to its non-Hispanic employees, but not providing the equipment that would facilitate the work to Plaintiff or its current/former Hispanic employees because of their race.

31.     Defendant also assigned the work so that Plaintiff and its other Hispanic employees were required to perform the more difficult, technical, and/or laborious tasks, while allowing its non-Hispanic employees to perform the easier tasks, at a slower pace, and with more assistance from co-workers.

32.     Defendant paid its similarly situated non-Hispanic employees with similar tenure and experience more than the hourly rates paid to Plaintiff and its current/former Hispanic employees, even though the non-Hispanic employees possessed the same or inferior qualifications.

33.     Defendant allowed its non-Hispanic employees to work during inclement weather such as rain, so as to allow them to continue to receive their hourly pay, but required Plaintiff and its current/former Hispanic employees to go home, such that they were not paid on those inclement days because of their race.

34.     Ultimately, Defendant was faced with the decision about whether to terminate employees, and if so, which ones.

35. Defendant terminated Plaintiff's employment on February 13, 2020.

36.     Defendant then proceeded to eliminate its employees based on whether they were Hispanic or not – when it terminated another 23 Hispanic employees on June 16/17, 2020.

37.     All of the persons fired by Defendant are/were Hispanic.

38.     Defendant filled the position held by Plaintiff and its other Hispanic employees by having its non-Hispanic employees who had less seniority and who were based out Defendant's

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

West Palm Beach office take over for the work of the Hispanic employees who were performing the work, who had more seniority, and who worked out of an office and who lived in areas closer to the jobsites designated by Defendant.

39.     More specifically, Defendant fired Plaintiff and its Hispanic employees who had more seniority, who worked out of its Pembroke Pines office and lived in Miami-Dade and Broward Counties and utilized its non-Hispanic employees who worked out of its West Palm Beach and lived outside of Miami-Dade and/or Broward Counties and who had less seniority than Plaintiff in order to continue the performance of the work at the jobsite located in Miami-Dade and Broward Counties.

40.     Defendant engaged in the above-referenced unlawful "employer practices" as the term is defined by 42 U.S. Code § 2000e−2 by engaging in the aforesaid actions.

41.     The discriminatory actions of Defendant against Plaintiff when considered individually or collectively, constitutes an adverse employment action because of his race for purposes of Title VII of the Civil Rights Act.

42.     These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Plaintiff and/or adversely affected his status as employee.

43.     As such, the disparate treatment he suffered constitutes an adverse employment action within the meaning of Title VII of the Civil Rights Act.

44.     Defendant's actions were malicious and demonstrated a reckless indifference to the rights of Plaintiff pursuant to Title VII of the Civil Rights Act.

45.     The aforementioned acts of commission and omission by Defendant were done

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

willfully, wantonly, and with reckless disregard for the consequences of such actions.

46.     Plaintiff suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

47.     Pursuant to Title VII of the Civil Rights Act Plaintiff is entitled to recover his attorneys' fees and costs from Defendant, in addition to damages and punitive damages

WHEREFORE Plaintiff, Esteban Guerra, demand the entry of a judgment in his favor and against Defendant, Pike Electric, LLC, after a trial by jury, declaring that Defendant violated Title VII of the Civil Rights Act in discriminating against him because of his race, awarding him compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting him a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of race, promoting Plaintiff to the position to which he should be holding, and awarding him his taxable costs and attorneys' fees.

## COUNT III – VIOLATION(S) OF TITLE VII
### (DISPARATE TREATMENT – NATIONAL ORIGIN)

Plaintiff, Esteban Guerra, reincorporate and re-allege paragraphs 1 through 14 as though set forth fully herein and further alleges as follows:

48.     Defendant was at all times material the "employer" of Plaintiff as the term is defined by the Civil Rights Act, 42 U.S.C. § 2000e(1).

49.     The Plaintiff was at all times material an "employee" of Defendant, as the term is defined by the Civil Rights Act, 42 U.S.C. § 2000e(f).

50.     Title VII of the Civil Rights Act provides as follows:

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

**(a)Employer practices**

It shall be an unlawful employment practice for an employer—

> **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> **(2)** to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S. Code § 2000e–2.

51.    Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of his position.

52.    Plaintiff performed his work for Defendant satisfactorily, and his was in all respects a good employee of Defendant.

53.    Defendant discriminated against Plaintiff by failing to treat him the same or similar to its non-Hispanic employees as a result of his national origin.

54.    One of the ways that Defendant treated Plaintiff (and its current/former Hispanic employees) differently is by providing hand tools to its non-Hispanic employees, but requiring that Plaintiff and the other Hispanic employees purchase their own hand tools because of their national origin.

55.    Another way that Defendant treated Plaintiff (and its current/former Hispanic employees) differently is by providing equipment to facilitate the work (in order to minimize the manual labor involved) to its non-Hispanic employees, but not providing the equipment that would facilitate the work to Plaintiff or its current/former Hispanic employees because of their national

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

origin.

56.     Defendant also assigned the work so that Plaintiff and its other Hispanic employees were required to perform the more difficult, technical, and/or laborious tasks, while allowing its non-Hispanic employees to perform the easier tasks, at a slower pace, and with more assistance from co-workers.

57.     Defendant paid its similarly situated non-Hispanic employees with similar tenure and experience more than the hourly rates paid to Plaintiff and its current/former Hispanic employees, even though the non-Hispanic employees possessed the same or inferior qualifications.

58.     Defendant allowed its non-Hispanic employees to work during inclement weather such as rain, so as to allow them to continue to receive their hourly pay, but required Plaintiff and its current/former Hispanic employees to go home, such that they were not paid on those inclement days because of their national origin.

59.     Ultimately, Defendant was faced with the decision about whether to terminate employees, and if so, which ones.

60.     Defendant terminated Plaintiff's employment on February 13, 2020.

61.     Defendant then proceeded to eliminate its employees based on whether they were Hispanic or not – when it terminated another 23 Hispanic employees on June 16/17, 2020.

62.     All of the persons fired by Defendant are/were Hispanic.

63.     Defendant filled the position held by Plaintiff and its other Hispanic employees by having its non-Hispanic employees who had less seniority and who were based out Defendant's West Palm Beach office take over for the work of the Hispanic employees who were performing the work, who had more seniority, and who worked out of an office and who lived in areas closer

13

to the jobsites designated by Defendant.

64.     More specifically, Defendant fired Plaintiff and its Hispanic employees who had more seniority, who worked out of its Pembroke Pines office and lived in Miami-Dade and Broward Counties and utilized its non-Hispanic employees who worked out of its West Palm Beach and lived outside of Miami-Dade and/or Broward Counties and who had less seniority than Plaintiff in order to continue the performance of the work at the jobsite located in Miami-Dade and Broward Counties.

65.     Defendant engaged in the above-referenced unlawful "employer practices" as the term is defined by 42 U.S. Code § 2000e−2 by engaging in the aforesaid actions.

66.     The discriminatory actions of Defendant against Plaintiff when considered individually or collectively, constitutes an adverse employment action because of his race for purposes of Title VII of the Civil Rights Act.

67.     These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Plaintiff and/or adversely affected his status as employee.

68.     As such, the disparate treatment he suffered constitutes an adverse employment action within the meaning of Title VII of the Civil Rights Act.

69.     Defendant's actions were malicious and demonstrated a reckless indifference to the rights of Plaintiff pursuant to Title VII of the Civil Rights Act.

70.     The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

71.     Plaintiff suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

72.     Pursuant to Title VII of the Civil Rights Act Plaintiff is entitled to recover his attorneys' fees and costs from Defendant, in addition to damages and punitive damages

WHEREFORE Plaintiff, Esteban Guerra, demand the entry of a judgment in his favor and against Defendant, Pike Electric, LLC, after a trial by jury, declaring that Defendant violated Title VII of the Civil Rights Act in discriminating against him because of his race, awarding him compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting him a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of race, promoting Plaintiff to the position to which he should be holding, and awarding him his taxable costs and attorneys' fees.

## COUNT IV – AGE DISCRIMINATION
## IN VIOLATION OF THE ADEA

Plaintiff, Esteban Guerra, reincorporates and paragraphs 1 through 14 as though set forth fully herein and further alleges as follows:

73.     The Age Discrimination in Employment Act, 29 U.S.C. §621, *et seq.* ("ADEA"), prohibits "arbitrary age discrimination in employment".

74.     Defendant was at all times material an "employer", as the term is defined by the ADEA. 29 U.S.C. §630.

15

75.     Defendant was at all times engaged in an industry affecting commerce by its performance of commercial cleaning services for businesses, including banks and other commercial institutions.

76.     Defendant at all times material employed twenty (2) or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

77.     Plaintiff was at all times material an "employee" of Defendant, as the term is defined by the ADEA. 29 U.S.C. §630.

78.     Defendant terminated Plaintiff's employment on February 13, 2020.

79.     Plaintiff was over 40 years old when Defendant terminated his employment.

80.     Plaintiff was qualified to continue to perform his work for Defendant when it terminated his employment.

81.     Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of his position.

82.     Plaintiff performed his work for Defendant satisfactorily, and his was in all respects a good employee of Defendant.

83.     Defendant made the decision to terminate Plaintiff's employment, in order to retain its substantially younger employees who held the same or similar positions, but who had not worked with Defendant for as long as Plaintiff.

84.     Defendant improperly discharged Plaintiff from his employment because of his age in violation of the ADEA.

85.     Defendant's acts of omission and/or of commission violated the ADEA, which prohibits discrimination against persons over 40 in the workplace.

16

86.     As a direct and proximate result of Defendant's conduct as described above, Plaintiff incurred economic losses, including the loss of wages and benefits, seniority, pension, vacation and sick leave benefits. In addition, his reputation was harmed and he suffered mental anguish and emotional distress as a direct and proximate result of Defendant's conduct.

WHEREFORE Plaintiff, Esteban Guerra, demands the entry of a judgment in his favor and against Defendant, Pike Electric, LLC, after a trial by jury, declaring that the Defendant violated the ADEA, awarding him compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting him a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of race, promoting Plaintiff to the position to which he should be holding, and awarding him his taxable costs and attorneys' fees.

## COUNT V – VIOLATION OF FLORIDA CIVIL RIGHTS ACT
### (DISPARATE TREATMENT – RACE)

Plaintiff, Esteban Guerra, reincorporate and re-allege paragraphs 1 through 14 as though set forth fully herein and further alleges as follows:

87.     The Florida Civil Rights Act of 1992 ("FCRA") makes it unlawful for an employer such as the Defendant to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of that individual's race.

88.     Defendant was, at all times material to this action, a "person" and/or an "employer" that was and remains subject to the Florida Civil Rights Act of 1992 by employing more than 15 people for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

89.     The FCRA prohibits Defendant from making employment decisions or from taking

17

personnel actions affecting the terms, conditions, and/or privileges of employment based upon race considerations.

90.     The FCRA allows a prevailing employee to obtain an order prohibiting Defendant from engaging in its discriminatory practice(s) and providing affirmative relief from the effects of the practice(s), to recover back pay, compensatory damages, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages. Fla. Stat. §760.11(5).

91.     Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of his positions.

92.     Plaintiff performed his work for Defendant satisfactorily, and he was in all respects a good employee of Defendant.

93.     Defendant discriminated against Plaintiff by failing to treat him the same or similar to its non-Hispanic employees as a result of his race.

94.     One of the ways that Defendant treated Plaintiff (and its current/former Hispanic employees) differently is by providing hand tools to its non-Hispanic employees, but requiring that Plaintiff and the other Hispanic employees purchase their own hand tools because of their race.

95.     Another way that Defendant treated Plaintiff (and its current/former Hispanic employees) differently is by providing equipment to facilitate the work (in order to minimize the manual labor involved) to its non-Hispanic employees, but not providing the equipment that would facilitate the work to Plaintiff or its current/former Hispanic employees.

96.     Defendant also assigned the work so that Plaintiff and its other Hispanic employees were required to perform the more difficult, technical, and/or laborious tasks, while allowing its

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

non-Hispanic employees to perform the easier tasks, at a slower pace, and with more assistance from co-workers.

97. Defendant paid its similarly situated non-Hispanic employees with similar tenure and experience more than the hourly rates paid to Plaintiff and its current/former Hispanic employees, even though the non-Hispanic employees possessed the same or inferior qualifications.

98. Defendant allowed its non-Hispanic employees to work during inclement weather such as rain, so as to allow them to continue to receive their hourly pay, but required Plaintiff and its current/former Hispanic employees to go home, such that they were not paid on those inclement days because of their race.

99. Ultimately, Defendant was faced with the decision about whether to terminate employees, and if so, which ones.

100. Defendant based its decision to terminate employees on their race – in particular whether they were Hispanic or not – when it terminated 23 employees on June 17-18, 2020.

101. Defendant terminated the employment of Plaintiff around March, 2020.

102. All of the persons fired by Defendant are/were Hispanic.

103. Defendant filled the positions held by Plaintiff and its other Hispanic employees by having its non-Hispanic employees who had less seniority, who were based out Defendant's West Palm Beach office take over for the work of the Hispanic employees who were performing the work, who worked out of an office and who lived in areas closer to the jobsites designated by Defendant.

104. More specifically, Defendant fired Plaintiff and its Hispanic employees who worked

19

out of its Pembroke Pines office and lived in Miami-Dade County and utilized its non-Hispanic employees who had less seniority, who worked out of its West Palm Beach and lived outside of Miami-Dade County in order to continue the performance of the work at the jobsite located in Miami-Dade and Broward Counties.

105.    Defendant engaged in one or more prohibited "discriminatory practice", as the term is defined by Fla. Stat. §760.02(4) and by §760.10(1) by engaging in the aforesaid actions, which is prohibited by Chapter 760, Florida Statutes.

106.    The discriminatory actions of Defendant against Plaintiff when considered individually or collectively, constitutes an adverse employment action because of their race for purposes of FCRA.

107.    These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Plaintiff and/or adversely affected his status as employee.

108.    As such, the disparate treatment he suffered constitutes an adverse employment action within the meaning of FCRA.

109.    Defendant's actions were malicious and demonstrated a reckless indifference to Plaintiff's rights pursuant to FCRA.

110.    The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

111.    Plaintiff suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

112.     Pursuant to the FCRA, Plaintiff is entitled to recover his attorneys' fees and costs from Defendant, in addition to damages and punitive damages.

WHEREFORE Plaintiff, Esteban Guerra, demands the entry of a judgment in his favor and against Defendant, Pike Electric, LLC, after a trial by jury, declaring that the Defendant violated the FCRA, awarding him compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting him a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of race, promoting Plaintiff to the position to which he should be holding, and awarding him his taxable costs and attorneys' fees.

## COUNT VI – VIOLATION OF FLORIDA CIVIL RIGHTS ACT
### (DISPARATE TREATMENT – NATIONAL ORIGIN)

Plaintiff, Esteban Guerra, reincorporate and re-allege paragraphs 1 through 14 as though set forth fully herein and further alleges as follows:

113.     The Florida Civil Rights Act of 1992 ("FCRA") makes it unlawful for an employer such as the Defendant to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of that individual's race.

114.     Defendant was, at all times material to this action, a "person" and/or an "employer" that was and remains subject to the Florida Civil Rights Act of 1992 by employing more than 15 people for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

115.     Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of his position.

116.     Plaintiff performed his work for Defendant satisfactorily, and his was in all

21

respects a good employee of Defendant.

117.     The FCRA prohibits Defendant from making employment decisions or from taking personnel actions affecting the terms, conditions, and/or privileges of employment based upon race considerations.

118.     The FCRA allows a prevailing employee to obtain an order prohibiting Defendant from engaging in its discriminatory practice(s) and providing affirmative relief from the effects of the practice(s), to recover back pay, compensatory damages, damages for mental anguish, loss of dignity, and any other intangible injuries, and punitive damages. Fla. Stat. §760.11(5).

119.     Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of his positions.

120.     Plaintiff performed his work for Defendant satisfactorily, and he was in all respects a good employee of Defendant.

121.     Defendant discriminated against Plaintiff by failing to treat him the same or similar to its non-Hispanic employees as a result of his national origin.

122.     One of the ways that Defendant treated Plaintiff (and its current/former Hispanic employees) differently is by providing hand tools to its non-Hispanic employees, but requiring that Plaintiff and the other Hispanic employees purchase their own hand tools because of their national origin.

123.     Another way that Defendant treated Plaintiff (and its current/former Hispanic employees) differently is by providing equipment to facilitate the work (in order to minimize the manual labor involved) to its non-Hispanic employees, but not providing the equipment that would facilitate the work to Plaintiff or its current/former Hispanic employees.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

124.    Defendant also assigned the work so that Plaintiff and its other Hispanic employees were required to perform the more difficult, technical, and/or laborious tasks, while allowing its non-Hispanic employees to perform the easier tasks, at a slower pace, and with more assistance from co-workers.

125.    Defendant paid its similarly situated non-Hispanic employees with similar tenure and experience more than the hourly rates paid to Plaintiff and its current/former Hispanic employees, even though the non-Hispanic employees possessed the same or inferior qualifications.

126.    Defendant allowed its non-Hispanic employees to work during inclement weather such as rain, so as to allow them to continue to receive their hourly pay, but required Plaintiff and its current/former Hispanic employees to go home, such that they were not paid on those inclement days because of their race.

127.    Ultimately, Defendant was faced with the decision about whether to terminate employees, and if so, which ones.

128.    Defendant terminated Plaintiff's employment on February 13, 2020.

129.    Defendant then proceeded to eliminate its employees based on whether they were Hispanic or not – when it terminated another 23 Hispanic employees on June 16/17, 2020.

130.    All of the persons fired by Defendant are/were Hispanic.

131.    Defendant filled the positions held by Plaintiff and its other Hispanic employees by having its non-Hispanic employees who had less seniority, who were based out Defendant's West Palm Beach office take over for the work of the Hispanic employees who were performing the work, who worked out of an office and who lived in areas closer to the jobsites designated by

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

Defendant.

132.    More specifically, Defendant fired Plaintiff and its Hispanic employees who worked out of its Pembroke Pines office and lived in Miami-Dade County and utilized its non-Hispanic employees who had less seniority, who worked out of its West Palm Beach and lived outside of Miami-Dade County in order to continue the performance of the work at the jobsite located in Miami-Dade and Broward Counties.

133.    Defendant engaged in one or more prohibited "discriminatory practice", as the term is defined by Fla. Stat. §760.02(4) and by §760.10(1) by engaging in the aforesaid actions, which is prohibited by Chapter 760, Florida Statutes.

134.    The discriminatory actions of Defendant against Plaintiff when considered individually or collectively, constitutes an adverse employment action because of his race for purposes of FCRA.

135.    These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of the employment of Plaintiff and/or adversely affected his status as employee.

136.    As such, the disparate treatment he suffered constitutes an adverse employment action within the meaning of FCRA.

137.    Defendant's actions were malicious and demonstrated a reckless indifference to Plaintiff's rights pursuant to FCRA.

138.    The aforementioned acts of commission and omission by Defendant were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

139.    Plaintiff suffered damages in the form of lost income in the past, lost income in the future, lost benefits, lost seniority rights, mental anguish, loss of dignity, and other intangible injuries.

140.    Pursuant to the FCRA, Plaintiff is entitled to recover his attorneys' fees and costs from Defendant, in addition to damages and punitive damages.

WHEREFORE Plaintiff, Esteban Guerra, demands the entry of a judgment in his favor and against Defendant, Pike Electric, LLC, after a trial by jury, declaring that the Defendant violated the FCRA, awarding him compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting him a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of race, promoting Plaintiff to the position to which he should be holding, and awarding him his taxable costs and attorneys' fees.

## COUNT VII – AGE DISCRIMINATION
## IN VIOLATION OF THE FCRA

Plaintiff, Esteban Guerra, reincorporates and re-alleges paragraphs 1 through 14 as though set forth fully herein and further alleges as follows:

141.    The Florida Civil Rights Act, Fla. Stat. §760.01, *et seq.* ("FCRA"), prohibits "discrimination because of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status".

142.    Defendant at all times material employed 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year and so was an "employer", as the term is defined by the FCRA. Fla. Stat. §760.02.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

143.     Plaintiff was at all times material a "person" as the term is defined by the FCRA. Fla. Stat. §760.02.

144.     Plaintiff was an "aggrieved person" as defined by the FCRA. *Id.*

145.     Plaintiff was over 40 years old when Defendant terminated his employment.

146.     Defendant terminated Plaintiff's employment on February 13, 2020.

147.     Plaintiff was qualified to continue to perform his work for Defendant when it terminated his employment.

148.     Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of his position.

149.     Plaintiff performed his work for Defendant satisfactorily, and his was in all respects a good employee of Defendant.

150.     Defendant made the decision to terminate Plaintiff's employment, in order to retain its substantially younger employees who held the same or similar positions, but who had not worked with Defendant for as long as Plaintiff.

151.     Defendant improperly discharged Plaintiff from his employment because of his age in violation of the FCRA.

152.     Defendant's acts of omission and/or of commission violated the FCRA, which prohibits discrimination against persons over 40 in the workplace.

153.     As a direct and proximate result of Defendant's conduct as described above, Plaintiff incurred economic losses, including the loss of wages and benefits, seniority, pension, vacation and sick leave benefits. In addition, his reputation was harmed and she suffered mental anguish and emotional distress as a direct and proximate result of Defendant's conduct.

135 San Lorenzo Avenue, Suite 770, Coral Gables, Florida 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

154.    Due to the difficulties that older workers encounter in finding replacement employment, the FCRA provides for aggrieved employees such as Plaintiff to also recover punitive damages against their former employer – in this case Defendnat.

WHEREFORE Plaintiff, Esteban Guerra, demands the entry of a judgment in his favor and against Defendant, Pike Electric, LLC, after a trial by jury, declaring that the Defendant violated the FCRA, awarding him compensatory damages including the loss of income in the past and in the future, lost benefits, seniority rights, for mental anguish, loss of dignity, other intangible injuries, for punitive damages, granting him a permanent injunction against Defendant from engaging in discriminatory employment practices on the basis of race, promoting Plaintiff to the position to which he should be holding, and awarding him his taxable costs and attorneys' fees.

## **DEMAND FOR JURY TRIAL**

Plaintiff, Esteban Guerra, demand a trial by jury of all issues so triable.

Dated this 18th day of November 2021.

s/Brian H. Pollock, Esq.
Brian H. Pollock, Esq.
Fla. Bar No. 174742
brian@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
Tel:    305.230.4884
Fax:    305.230.4844
*Counsel for Plaintiff*

27